```
       IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF ALABAMA
                 SOUTHERN DIVISION
```

MARTHA MARTIN,                  }
                                }
        Plaintiff,              }
                                }     CIVIL ACTION NO.
v.                              }     02-AR-2482-S
                                }
BAPTIST HEALTH SYSTEM, INC.,    }
d/b/a Shelby Ridge Nursing      }
Home,                           }
                                }
        Defendant.              }



FILED 04 MAY 10 PM 3:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAY 10 2004

## MEMORANDUM OPINION

Before the court is the motion of defendant, Baptist Health System, Inc., d/b/a Shelby Ridge Nursing Home ("Shelby Ridge"), for summary judgment (Doc. 39). Plaintiff, Martha Martin ("Martin"), a black female and former employee of Shelby Ridge, filed the above-entitled action on October 9, 2002 in this court. Martin alleged that Shelby Ridge violated her rights under Title VII of the Civil Rights Act of 1964 as amended, under 42 U.S.C. § 1981, and under Alabama law. Martin makes four claims, (1) hostile work environment in violation of Title VII and § 1981, (2) retaliatory discharge in violation of Title VII and § 1981, (3) the Alabama tort of negligent hiring and/or negligent supervision, and (4) the Alabama tort of outrage. Shelby Ridge seeks summary judgment on all four claims, and also on Martin's request for economic, non-economic, and punitive damages.

**Summary Judgment Facts**

Martin obtained employment with Shelby Ridge in October 2000 through Briggs & Briggs, Inc. ("Briggs & Briggs"), a temporary employment agency. Martin was employed as a cook at Shelby Ridge until her termination on April 5, 2001.

According to Martin, during her tenure at Shelby Ridge, Tom Mays, her supervisor and a full-time management employee at Shelby Ridge, created a racially hostile work environment through his actions and comments. Specifically, Martin alleges the following:

> During my employment at Shelby Ridge Nursing Home, I heard Tom Mays say the word "nigger" on five occasions. Mays said the word "nigger" directly to me on two occasions. I heard Mays call Derek Burns, a co-worker, a "nigger" on one occasion. I also heard Mays refer to a joke as a "nigger joke." I also heard Mays say that he did not want to give food to a homeless shelter because he did not want the "niggers" to have the food. Mays constantly told racially derogatory jokes in the kitchen which I heard...Mays also walked through the kitchen singing "Swing Low, Sweet Chariot." On many occasions, I heard Mays says, "What you talking about Willis" in a black dialect and make other comments in a black dialect. I also heard Mays refer to Derek Burns as "boy" on at least twenty occasions. Further, I heard Mays make racially derogatory remarks about television shows that depicted white and black people living in an integrated setting. Mays stated that he did not believe in black and white people socializing together.

Martin Aff., Doc. 46 ex. 3 ¶ 4.

Martin also alleges that Mays terminated her employment with Shelby Ridge on April 5, 2001, because she complained about his harassment to Natalie Dill ("Dill"), Martin's contact person at Briggs & Briggs. Martin's version of the events on the day of her

termination are as follows:

> On April 5, 2001, my last day of employment at Shelby Ridge Nursing Home, I spoke to Tom Mays about a complaint made by a resident.... Mays started screaming at me and told me to shut up. Subsequently, he apologized for screaming at me. I asked him why he screamed at me. I also asked him why he treated me and my co-workers like dogs. He told me that he screamed "because all you niggers were out there talking loud and I had to scream over you niggers." I asked him "what did you say?" He said to me, "What do you think I said." I asked him if I could use the telephone because I had to call Briggs and Briggs. Mays did not reply. I then called Natalie Dill at Briggs and Briggs. I told Natalie Dill that Mays had used the word "nigger" twice. Dill told me that Mays was on the other line and that he was telling her a much different story. Mays then told me to give him my keys and leave the premises because I went over his head calling Briggs and Briggs, and he had security escort me from the building.

Martin Aff., Doc. 46 ex. 3 ¶ 5.

## Analysis

### *Martin's Affidavit*

Shelby Ridge's primary argument is that Martin's affidavit, quoted from above, was submitted only to defeat Shelby Ridge's Rule 56 motion and must be disregarded as a sham. Shelby Ridge argues that the affidavit directly contradicts Martin's prior deposition testimony.

In *Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656 (11th Cir. 1984), the Eleventh Circuit held that affidavits that contradict prior deposition testimony submitted to defeat a Rule 56 motion can, in certain circumstances, be disregarded as a sham. In deciding whether an affidavit is a sham, a court must

make a distinction "between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). The *Tippens* court explained the reason for making this distinction:

> The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended. To allow every failure of memory or variation in witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth. Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact.

*Id.* at 953-54. An affidavit should only be disregarded "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, [and that party] thereafter [attempts to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins*, 736 F.2d at 657.

Shelby Ridge relies on the following excerpt from a deposition Martin gave in a case unrelated to the instant case. Martin had previously sued Alabama Thrift Store alleging that she was discriminated against as a customer. Shelby Ridge quoted the following exchange in a deposition related to the Alabama Thrift

4

Store litigation to demonstrate that Martin's affidavit in the instant case is a sham:

> Q: Have you ever filed any charge of discrimination with the EEOC?
> A: Yes.
> ...
> Q: And against whom did you file the EEOC charge?
> A: Shelby Ridge Nursing Home.
> ...
> Q: Tell me about that. What happened?
> A: I was a cook there, and the manager called me the "N" word.
> ...
> Q: Why did you leave there?
> A: They terminated me because-- I don't know why.
> Q: Why did they tell you they terminated you?
> A: That my boss didn't want me back on the premises.
> ...
> Q: Was there some incident between you and your boss?
> A: Not with me. With my boss.
> ...
> Q: Does it stem from him using this racial slur you referenced a minute ago?
> A: No.
> Q: Let's take them one at a time, and we'll work our way backwards.
> ...
> A: Okay. I was a cook there, and a patient's family came in. And [said the kitchen] wasn't going by the doctor's menu for the patient. And a family member came in and told me to give [Mays] a message.
> ...
> Q: So then what happened?
> A: ...I gave [Mays] the message, and he didn't want to hear it. He went in and locked hisself in his office.
> Q: This was on Monday?
> A: Yes. That was on Monday [April 5, 2001]. He locked hisself in his office, and he started screaming and hollering at me. When he calmed down, he knocked on the window and told me to come in.
> ...
> Q: Please continue with the story.
> A: Okay. When he calmed down...he called me in the office, and he apologized. And in apologizing to me, another girl walked in and told him the same thing, and

5

> he started back screaming and hollering.
> Q: Told him about the menu request?
> A: Yes, another lady. And then he just told me to get out of his office and give him the keys, because he didn't want to hear nothing that we the "N" word had to say to him.
> . . .
> Q: So what happened after that?
> A: He told me to give him the keys. And when I gave him the keys, he told me I would be escorted out of the building, because he didn't want no niggers telling him how to run his business.
> . . .
> Q: So you filed an EEOC charge; is that right?
> A: Yes.
> Q: Now did you have any other problems while you were at Shelby Ridge Nursing Home other than this incident involving Tom Mayes [sic]?
> A: No.

Doc. 42 ex. 8 at 28-39.

Shelby Ridge is correct that there are differences between this deposition excerpt and the affidavit submitted in response to the Rule 56 motion. The most important difference is that Martin says that she had no other problems at Shelby Ridge besides the incident with Mays.

As mentioned previously, the deposition that Shelby Ridge relies on is from an unrelated case against Alabama Thrift Store. In Martin's deposition for the instant case, counsel for Shelby Ridge asked Martin about the discrepancy between the deposition in the unrelated litigation and the allegations in the instant case. In her deposition, Martin offered the following explanation for the inconsistency:

> Q: And in your Alabama Thrift Store deposition, you told

>the Alabama Thrift Store lawyer about one incidence where
>the N-word was used. And then you said that you had no
>further problems at Shelby Ridge involving Tom Mays; is
>that right?
>**A:** Because I got fired that day. That's why I didn't
>have no other ones.

Martin Dep., Doc. 42 at 30. Martin's explanation is that she thought the lawyer in the Alabama Thrift Store case was asking if there were any more problems after the incident Martin described. Martin did not think the lawyer was asking about whether there were incidents prior to the one described in Martin's deposition.

The court is satisfied that the Martin's affidavit is not a sham. Shelby Ridge has pointed out some inconsistencies, but those inconsistencies go to Martin's credibility and must be dealt with by a jury and not by this court. Martin's story throughout this litigation has been that more than just one incident formed the basis of her lawsuit. Her affidavit submitted to the EEOC on August 23, 2001 prior to her deposition in the Alabama Thrift Store case noted more than just the one incident with Mays as providing the basis for her charge. Martin EEOC Aff., Doc. 42 ex. 7. Martin also talks about other incidents in her deposition in the instant case. See e.g., Martin Dep., Doc. 42 at 59. Perhaps because the excerpt relied on by Shelby Ridge is from an unrelated case, the details of the charges in this case were not fully explored in that deposition, and Martin has at least offered an explanation for her contradictory statements. Under the circumstances, the court finds that Martin's affidavit submitted in opposition to the Rule 56

7

motion is not a sham.

## State Law Claims

Having decided that Martin's affidavit is not a sham, the court must now decide whether Martin has created a fact issue on her four claims and her request for economic, non-economic, and punitive damages. In her response to the motion for summary judgment, Martin abandoned her state law claims. The motion for summary judgment will be granted with respect to those claims.

## Hostile Work Environment

In order to make out a hostile work environment claim Martin must show (1) that she is a member of a protected group; (2) that she has been subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic, such as race; "(4) that the harassment was sufficiently severe or pervasive to the alter terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

Shelby Ridge argues that Martin has not met the fourth element of the hostile work environment claim. There is both an objective and subjective component to the fourth element of a hostile work environment claim. *See Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-71, 126 L.Ed.2d 295 (1993). To be

8

actionable, harassing behavior must result in "both an environment 'that a reasonable person would find hostile or abusive' and an environment that the victim 'subjectively perceive[s]...to be abusive.'" *Kenworth,* 277 F.3d at 1276 (quoting *Harris,* 510 U.S. at 21-22, 114 S.Ct. at 370-71, 126 L.Ed.2d 295).

In *Kenworth,* the Eleventh Circuit explained, "[i]n evaluating the objective severity of the harassment, we consider, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Kenworth,* 277 F.3d at 1276. Viewing the evidence in a light most favorable to Martin, the court finds that, under the totality of the circumstances, Martin has established that Mays' conduct was objectively abusive. First, while Mays' use of the word "nigger" five times over the course of six months, two of which came on Martin's last day of employment, is not frequent, Martin also alleges that Mays "constantly told racially derogatory jokes." Martin Aff., Doc. 46 ex. 3 ¶ 4. The court finds that such conduct does meet the frequency requirement. Second, Mays' conduct was arguably severe. Martin alleges that he told racially derogatory jokes on a consistent basis, made negative comments regarding integrated living, and occasionally, although infrequently, used the word "nigger." Third, there is no

9

allegation that Mays was ever physically threatening toward Martin. However, his alleged use of the word "nigger" and his telling of racially derogatory jokes is arguably humiliating conduct and more than an offensive utterance. Martin has sworn that she was humiliated by Mays' conduct. Martin Aff., Doc. 46 ex. 3 ¶ 8. Fourth, Martin alleges that her job performance was affected, because she was always concerned about what offensive comment Mays might say next, and because she was afraid to ask Mays questions about her job duties. Martin Aff., Doc. 46 ex. 3 ¶ 8. Shelby Ridge does not challenge this assertion. Based on the totality of the evidence submitted by the parties, the court finds that Martin has created a fact issue on whether the alleged racially hostile environment at Shelby Ridge was objectively abusive.

The court now turns to the issue of whether Martin subjectively perceived the environment as abusive. In her affidavit, Martin states:

> As a result of the racially hostile environment I was subjected to while working at Shelby Ridge Nursing Home, I was deeply humiliated during my employment. Although I loved cooking, many days I dreaded coming to work because I knew that on any given day I would hear racial slurs, racist jokes and other derogatory comments about black people from Mays.

Martin Aff., Doc. 46 ex. 3 ¶ 8. Martin also testified that the work environment bothered her enough to complain to Dill and to employees at Shelby Ridge. See Martin Dep., Doc. 42 at 55-56, 60-64. The court finds that Martin has presented sufficient evidence

10

to demonstrate that she subjectively perceived the work environment as abusive.

Shelby Ridge does not challenge any other element of the hostile work environment claim. The motion for summary judgment as to the hostile work environment claim will be denied.

*Retaliatory Discharge Claim*

The court now turns to Martin's retaliatory discharge claim. The framework announced in *McDonnell Douglas* governs the proof required in a retaliation case when direct evidence is lacking. *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 600 (11th Cir. 1986); see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a *prima facie* case of retaliation an employee must demonstrate (1) that she engaged in a statutorily protected activity, (2) that she suffered an adverse employment action, and (3) that there is a causal connection between the two. *Donnellon*, 794 F.2d at 600-01. If plaintiff succeeds in doing this, the employer must then rebut the *prima facie* case by producing a legitimate, nondiscriminatory reason for its action. *Donnellon*, 794 F.2d at 601; see *McDonnell Douglas*, 411 U.S. at 802; *Tex. Dep't of Community Aff. v. Burdine*, 450 U.S. 248, 254 (1981). If the employer meets this burden, the employee is then given the opportunity to rebut by offering proof that the articulated reason is pretextual. *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997); see *McDonnell Douglas*, 411 U.S. at 804;

11

*Burdine,* 450 U.S. at 256.

Shelby Ridge concedes that Martin engaged in a statutorily protected activity by complaining to Dill, and that Martin suffered an adverse employment action when she was terminated. Shelby Ridge does, however, challenge Martin's retaliation claim on the causal connection element. Shelby Ridge puts forward two arguments. First, Shelby Ridge argues that Martin first suffered the adverse employment action about which she complains, and only after suffering the adverse employment action did she engage in a statutorily protected activity. From this sequence, Shelby Ridge asks this court to join it in deducing the absence of a causal connection. Shelby Ridge provides no citation of authority for this proposition, although it has a logic to it if the sequence is as Shelby Ridge says it is. However, the court's review of the record reveals a dispute over the sequence. Martin's story is that she was terminated *after* she called Briggs & Briggs to complain about Mays' conduct. Martin Aff., Doc. 46 ex. 3 ¶ 5; Martin EEOC Aff., Doc. 42 ex. 7; Martin Dep., Doc. 42 at 55-56.

Second, Shelby Ridge argues that Martin has not demonstrated that Mays knew about her protected conduct. In order to establish a causal connection between the adverse employment action and the protected activity, the plaintiff must show that "the protected activity and the adverse action were not wholly unrelated."

12

*Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985). The plaintiff can do this if she "provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) (emphasis supplied); see *Gupta v. Fla. Bd. of Regents,* 212 F.3d 571, 590 (11th Cir. 2000); *Clover v. Total Sys. Serv., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999); *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163-64 (11th Cir. 1993). The decisionmaker's awareness of the protected activity can, of course, be proven through circumstantial evidence as well as by his admission. *Goldsmith,* 996 F.2d at 1163. Shelby Ridge argues that, while temporal proximity has been established, there is no proof of corporate knowledge of the protected activity. Shelby Ridge says that Martin conveniently expanded her testimony from the time of her deposition to the time of her affidavit submitted in response to the Rule 56 motion, so that she could establish that Mays knew of her protected conduct. Shelby Ridge points out that in her deposition Martin said that she asked Mays if she could use the telephone without specifying who she was going to call. However, Martin's affidavit states that she asked if she could use the phone to call Briggs & Briggs. In making this argument, Shelby Ridge ignores Martin's EEOC affidavit given well before her deposition which also states that she told Mays she was

13

going to call Briggs & Briggs. Martin EEOC Aff., Doc. 42 ex. 7. Even if the court were to accept Shelby Ridge's argument that Martin did not mention Briggs & Briggs when she said she was going to use the telephone, and ignore Martin's EEOC affidavit and affidavit submitted in response to the Rule 56 motion, the court finds that Martin has presented sufficient circumstantial evidence in her deposition testimony alone to make a jury case of awareness on the part of Mays. In her deposition, Martin explained what happened right after Mays allegedly used the word "nigger" twice:

> I said, Tom, what did you say?...And he said, what did you think I said? And I said, well, can I use the phone?...He didn't say nothing. So I stepped around the corner to use the phone in the kitchen...So I was on the phone. [Dill] came on. She said, hold on, Martha, Tom is on the other end. And she said, just a minute. Let me get him off the phone. Let me come back to you. I want to know what happened. So I told her.... But in the meantime, Tom walked out the door [of his office]...He said, give me the keys...I want you off the premises.

Martin Dep., Doc. 42 at 55. The court finds that Martin has presented sufficient evidence through her deposition testimony, EEOC affidavit, and the affidavit submitted in response to the Rule 56 motion to demonstrate a causal connection on her retaliation claim.

As previously stated, Shelby Ridge does not challenge any other aspect of the retaliation claim, including offering a legitimate reason for terminating Martin. The motion for summary judgment with regard to the retaliation claim will be denied.

14

*Damages*

Shelby Ridge also asks the court to grant it summary judgment on Martin's request for economic, non-economic, and punitive damages. First, Shelby Ridge argues that Martin is not entitled to economic damages because she did not mitigate her damages by getting another assignment through Briggs & Briggs. According to Martin, she did, however, obtain employment with Wal-Mart, and Shelby Ridge does not dispute that assertion. *See* Martin Dep., Doc. 42 at 34. This is sufficient to create a fact issue on economic damages.

Second, Shelby Ridge argues that Martin is not entitled to non-economic damages, because in her deposition she said she was devastated because Mays yelled at her. Martin Dep., Doc. 42 at 58. Shelby Ridge concludes that she was only upset by being yelled at and not by the use of racial slurs, and thus is not entitled to non-economic damages. The court finds this argument unpersuasive. Martin did not testify that the yelling was the only reason she was devastated. In her affidavit, Martin swore that she was humiliated and belittled by Mays' alleged use of the word "nigger" and other forms of harassment that occurred during Martin's time at Shelby Ridge. Martin Aff., Doc. 46 ex. 3 ¶¶ 8,9.

Third, Shelby Ridge says that it is entitled to summary judgment on the request for punitive damages because Martin has not demonstrated that Shelby Ridge acted with malice or reckless

disregard to Martin's federally protected rights. Shelby Ridge can be held liable for punitive damages if Martin can demonstrate that higher management at Shelby Ridge countenanced or approved Mays' alleged behavior. *Kenworth*, 277 F.3d at 1280. Martin says that she reported Mays' conduct to Tim German ("German"), the head of food service for Shelby Ridge and Mays' direct supervisor, at the time of her termination, and that German did not do anything about it. *See* Martin Dep., Doc. 42 ex. 3 at 63-65; Martin Aff., Doc. 46 ex. 3 ¶ 6. Shelby Ridge argues that Shelby Ridge owed Martin no duty at the time she complained to German, because Martin had already been terminated by Mays. The court is not persuaded by this argument. Employers are not insulated from an award of punitive damages simply because a complaining employee has been recently terminated. Martin's evidence is sufficient under Rule 56 consideration to create a fact issue on her entitlement to punitive damages.

## Conclusion

By separate order, the court will grant Shelby Ridge's motion with respect to Martin's state law claims and deny the motion in all other respects.

DONE this ___10th___ day of May, 2004.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE